UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MITCHELL BOND,

                Plaintiff,                                    **MEMORANDUM AND ORDER**
                                                                14-CV-2431 (RRM) (VVP)

   - against -

CITY OF NEW YORK,

                Defendant.
-----------------------------------------------------------X
ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Mitchell Bond brings this action against defendant City of New York (the "City") under 42 U.S.C. § 1983 and state law, alleging claims for false arrest, false imprisonment, malicious prosecution, and negligence. Before the Court is the City's motion to dismiss, or in the alternative, for summary judgment. For the reasons set forth below, the City's motion to dismiss is granted in its entirety.

## BACKGROUND

### 1. Factual Background

The following allegations are taken from Bond's complaint and, for purposes of this motion to dismiss, accepted as true. *See Stratte-McClure v. Morgan Stanley*, 776 F.3d 94, 97 n.1 (2d Cir. 2015). On September 8, 2010, Bond was arrested by the New York City Police Department ("NYPD") and charged with robbery.[1] (Compl. (Doc. No. 1) at ¶¶ 10–11.)

---

[1] Although Bond's complaint states that he was arrested on August 11, 2010, the parties agree that the correct date was September 8, 2010. (*Compare* Compl. (Doc. No. 1) at ¶ 10, *with* Def.'s Mem. Mot. Dismiss (Doc. No. 17) at 1 n.1, *and* Pl.'s Mem. Opp'n Mot. Dismiss (Doc. No. 18) at 2.)

According to the Criminal Complaint filed in the state court action, the victim, Sanjeev Singh, a livery cab driver, reported to police the following. On the evening of August 9, 2010 Singh was dispatched to a location and was provided with a phone number from the caller. At the location, Bond, together with Edwin DeJesus and Bobby Tillman, both of whom were previously arrested, approached his vehicle. Bond sat in the left rear passenger seat, directly behind Singh. DeJesus, wearing a black face mask, sat in the front passenger seat, while Tillman stood outside the driver's door. DeJesus placed a pistol against Singh's hip and demanded Singh's property. Singh complied, handing over money. DeJesus searched the vehicle for additional property, and Tillman reached in through an open window and removed a GPS device. Tillman then removed Singh from his car, and then he and Bond searched Singh pockets and took a camera from livery cab. The assailants then fled. The police later recovered a black bb gun, a black face mask, and a Garmin GPS from Tillman's vehicle, all of which were identified by Singh from the night of the incident. DeJesus admitted that the phone number accompanying the dispatch call was his. (Def.'s Mem. Mot. Dismiss. (Doc. No. 17) at 1 (citing Criminal Compl. (Doc. No. 16-3) at 1).) A DD-5 Report dated August 11, 2010 indicated that the livery driver had identified Bond in a photo array as one of the participants in the armed robbery. (*Id.* (citing DD-5 Report (Doc. No. 16-4) at 1; Photo Array (Doc. No. 16-5) at 1).)

By criminal indictment, filed on October 21, 2010, a New York State grand jury charged Bond with Robbery in the Second Degree. (*Id.* (citing Grand Jury Indictment (Doc. No. 16-6) at 4).) Bond was held in custody, and eventually released in the winter of 2013 after a New York Supreme Court Judge dismissed the charges against him. (*Id.* at ¶¶ 11–13.)

**2. Procedural Background**

Bond brought the current action against the City on April 15, 2014, alleging violations of his constitutional rights and state law and asserting causes of action for (1) false arrest, (2) false imprisonment, (3) malicious prosecution, and (4) negligence. (*See* Compl.) On January 20, 2015, the City moved to dismiss, or in the alternative for summary judgment, arguing that (i) Bond's claims for false arrest and false imprisonment are time-barred by the three-year statute of limitations, (ii) Bond's claim for negligence is precluded because he failed to file a notice of claim within ninety days of the incident giving rise to the claim, and (iii) Bond's claim for malicious prosecution fails because Bond has failed to rebut the presumption of probable cause created by his grand jury indictment. (*See* Def.'s Mem. Mot. Dismiss.) For the reasons that follow, the City's motion is granted.

## STANDARD OF REVIEW

**1. Legal Standard**

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint. Generally, under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[] factual allegations [in the complaint] to be true and draw[] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted). A complaint need not contain "detailed factual

allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 570). The determination of whether "a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663–64 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir. 2007)).

   2. **Extrinsic Documents**

As a general rule, a court may not consider matters outside of the pleadings on a motion to dismiss for failure to state a claim under Rule 12(b)(6), and Rule 12(d) instructs that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *Bejaoui v. City of New York*, No. 13–CV–5667 (NGG) (RML), 2015 WL 1529633, at *4 (E.D.N.Y. Mar. 31, 2015) (quoting Fed. R. Evid. 12(d)). Notwithstanding this conversion requirement, a court may also consider the following for purposes of a motion to dismiss: (1) documents attached to the complaint or incorporated in it by reference, (2) documents that are integral to the complaint, and (3) matters of which judicial notice may be taken under Rule 201 of the Federal Rules of Evidence. *Grant v. Cty. of Erie*, 542 F. App'x 21, 23 (2d. Cir. 2013); *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 63 n.4 (2d Cir. 2012) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.

2007)). In order to find a document "integral" to a complaint, it must be shown that the plaintiff "relie[d] heavily upon its terms and effect" when drafting the complaint; "mere notice or possession is not enough." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A court may take judicial notice of a fact "that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Guided by these principles, the Court will consider both the Criminal Complaint filed in the state court criminal proceedings, and the fact of the grand jury indictment as both integral to the complaint in this action. *Obilo v. City Univ. of N.Y.*, No. 01-CV-5118 (DGT), 2003 WL 1809471 at *4–5 (E.D.N.Y. Feb. 28, 2003) (It is "well established" that it is appropriate for the Court to take judicial notice of Bond's arrest report, criminal complaint, grand jury indictment and "criminal disposition data." ); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1389 (2d Cir. 1992) (noting with approval that the court had previously taken judicial notice of several indictments); *Weaver v. City of New York*, No. 13–CV–20 (CBA) (SMG), 2014 WL 950041, at *3 (E.D.N.Y. Mar. 11, 2014) ("A court may certainly take judicial notice of public records for their existence, such as an indictment or documents relating to the disposition of a criminal case.").

## DISCUSSION

1. **False Arrest and False Imprisonment**[2]

The City moves to dismiss Bond's claims for false arrest and false imprisonment as time-barred under the statute of limitations. The parties agree that the proper statute of limitations in this case is three years, and each cites the Supreme Court's decision in *Wallace v. Kato* as the authority for determining when the statute of limitations begins to run. (Def.'s Mem. Mot. Dismiss at 6; Pl.'s Mem. Opp'n Mot. Dismiss at 5; *see generally Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994) (citing *Owens v. Okure*, 488 U.S. 235, 250–01 (1989) (three-year statute of limitations)); *Wallace v. Kato*, 549 U.S. 384 (2007).) The parties disagree, however, as to the application of *Wallace*. The City maintains that the statute of limitations begins to run when the alleged false imprisonment ends and the victim becomes held pursuant to legal process, namely at the time he is bound over to a magistrate judge or arraigned on charges. (Def.'s Mem. Mot. Dismiss at 6 (citing *Wallace*, 549 U.S. at 389).) Noting that Bond was arrested on September 8, 2010, the City argues that "plaintiff's false arrest claim began to accrue – conservatively estimating – on or about September 10, 2010, when he was arraigned." (*Id.*) Accordingly, the City concludes that the statute of limitations expired on or about September 10, 2013. (*Id.*)

Bond, on the other hand, cites *Wallace* for the proposition that the statute of limitations begins to run "when the wrongful act or omission results in damages . . . even though the full extent of the injury is not then known or predictable." (Pl.'s Mem. Opp'n Mot. Dismiss at 5 (citing *Wallace*, 549 U.S. at 391).) He argues that his injury was ongoing and continued until his

---

[2] The Court analyzes the charges for false arrest and false imprisonment together. *See Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir.1999) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment.").

6

charges were dismissed in December of 2013, and that the statute of limitations therefore did not begin to run until then. (*Id.* at 6.)

Bond's interpretation of *Wallace* is simply unsupported. The court's decision is that case was clear:

> Limitations begin to run against an action for false imprisonment when the alleged false imprisonment ends. . . . Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process – when, for example, he is bound over by a magistrate or arraigned on charges. . . . We conclude that the statute of limitations on petitioner's § 1983 claim commenced to run when he appeared before the examining magistrate and was bound over for trial.

*Wallace*, 549 U.S. at 389–90. Bond has not challenged the City's estimation that he was arraigned on or about September 10, 2010. The Court thus finds that the statute of limitations as to Bond's claims for false arrest and false imprisonment expired on or about September 10, 2013, well before he brought this action on April 15, 2014.

Even so, Bond also claims that the statute of limitations, if it has expired, should be equitably tolled. (Pl.'s Mem. Opp'n Mot. Dismiss at 2, 6.) He states in general terms that "[a] statute of limitations may be tolled as necessary to avoid inequitable circumstances," (Pl.'s Mem. Opp'n Mot. Dismiss at 6 (citing *Bowers v. Transp. Maritima Mexicana, S.A.*, 901 F.2d 258, 264 (2d Cir. 1990)), but provides no explanation for why equitable tolling is appropriate in this case.

"The burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff." *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). The Second Circuit has stated that equitable tolling should be applied only in "rare and exceptional circumstances," where "extraordinary circumstances" have prevented a party from timely performing a required act, and the party acted with reasonable diligence throughout the period he seeks to toll. *Walker v. Jastremski*, 430 F.3d 560, 564 (2d. Cir. 2005). "The term 'extraordinary' refers not to the

7

uniqueness of a party's circumstance, but rather to the severity of the obstacle impeding compliance with a limitations period." *Bailey v. City of New York*, 79 F. Supp. 3d 424, 441 (E.D.N.Y 2015) (quoting *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011)). For example, courts have found equitable tolling appropriate in instances of "a corrections officer's intentional confiscation of a prisoner's petition shortly before the filing deadline, . . . a state appellate court's failure to inform a prisoner that his leave to appeal was denied, . . . [and] an attorney's failure to file a habeas petition on behalf of a prisoner, despite explicit directions from the prisoner to do so . . . ." *Dillon v. Conway*, 642 F.3d 358, 364 (2d Cir. 2011) (internal citations omitted); *see also, e.g.*, *Moses v. Westchester Cty. Dep't of Corrections*, 951 F. Supp. 2d 448, 454 (S.D.N.Y. 2013) (Finding equitable tolling appropriate where victim for whom estate brought § 1983 action was "a mentally-ill, homeless, incarcerated immigrant beaten into a coma, [who] subsequently die[d], with estranged next-of-kin living in a foreign country").

In an effort to support a claim for equitable tolling, Bond asserts for the first time in his opposition to the City's motion a litany of new allegations in an attempt to call into question the probable cause supporting his arrest and grand jury indictment. For example, he writes that "the taxi cab driver told officers that the plaintiff sat directly behind him in the dark and therefore was not able to see the person's face at any time," that "the actual participants in the robbery informed the police officers that Plaintiff was not involved," and that "[n]o real evidence was submitted to the grand jury connecting the Plaintiff to this crime." (Pl.'s Mem. Opp'n Mot. Dismiss (Doc. No. 18) at 2–3.) He also contends that "the complaining witness had given a statement to the police on a prior occasion that he had not seen the Plaintiff and could not identify him," and that the City "knew that the photo array they asked the complaining witness to view would be, at a minimum, inaccurate." (*Id.* at 7.) Bond asserts that the identification was

8

"very likely coerced by the officer to meet his objective, which was to punish the defendant [sic] for not cooperating in other investigations" regarding other robberies in his neighborhood. (*Id.* at 3, 7.)

Critically, none of these new allegations is made in admissible form. They are the unsworn statements of Bond's counsel, with no evidentiary support whatsoever, from Bond himself, or otherwise. It is well-established that when assessing a motion to dismiss, "a court considers only the allegations made in the complaint and any documents attached thereto, and thus disregards allegations made in a memorandum of law." *Llanos v. Brookdale Univ. Hosp. & Med. Ctr.*, No. 10-CV-1726 (DLI) (RML), 2011 WL 809615, at *4 (E.D.N.Y. Mar. 2, 2011) (citing *Khanukayev v. Times Square Alliance*, 2010 WL 2000552, at *2 n. 4 (S.D.N.Y. May 20, 2010)); *see also Hayden v. Cty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999) ("[A] district court must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits and documents incorporated by reference in the complaint."). Bond may not attempt to defeat the City's motion to dismiss by asserting new facts through counsel for the first time in his opposition. *See Peacock v. Suffolk Bus. Corp.*, No. 14-CV-4479 (LDW) (AKT), 2015 WL 1849870, at *5 (E.D.N.Y. Apr. 23, 2015) ("It is well-settled that a plaintiff cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.") (alterations in original) (internal quotation marks omitted) (citing *K.D. v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)).

Moreover, even accepting as true the allegations in Bond's complaint, as well as his opposition to the City's motion to dismiss, Bond has failed to demonstrate that equitable tolling is appropriate in this case. He has not alleged anything to suggest that he was not aware of the

facts giving rise to this action or that he was somehow precluded from bringing this action during the three years following his arraignment. *See, e.g.*, *Ellis v. Wilkson*, 81 F. Supp. 3d 229, 235 (E.D.N.Y. 2015) ("Plaintiff was aware of the allegedly unconstitutional conduct in 2010, and has failed to provide to the Court any facts that could give rise to equitable tolling."); *Rene v. Jablonski*, No. 08–CV–3968 (JFB)(AKT), 2009 WL 2524865, at *7 (E.D.N.Y. Aug. 17, 2009) ("[A]lthough plaintiff's allegations of misconduct by the defendant . . . are quite serious, if true, there is absolutely no indication that such actions interfered with plaintiff's awareness of potential alleged injuries for which he could bring a civil action under Section 1983 . . . ."). Bond's claims for false arrest and false imprisonment must therefore be dismissed as time-barred under the statute of limitations.) Thus, Bond has failed to meet the standard for equitable tolling, and his claims for false arrest and false imprisonment are thus barred by the statute of liminations.

### 2. Malicious Prosecution

The City argues that Bond's claim for malicious prosecution must be dismissed because probable cause was established by the grand jury indictment, and Bond has failed to rebut that presumption. The Court agrees.

To state a claim for malicious prosecution under New York law, the plaintiff must show: (1) the defendant initiated a criminal proceeding; (2) the proceeding terminated in plaintiffs favor; (3) there was no probable cause for the criminal charge; and (4) the defendant acted maliciously. *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *see also Boyd v. City of New* York, 336 F.3d 72, 76 (2d Cir. 2003); *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003); *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Colon v. City of New York*, 60 N.Y.2d 78, 82, 455 N.E.2d 1248, 468

10

N.Y.S.2d 453 (1983). In addition, the Court of Appeals requires that in order "to sustain a § 1983 malicious prosecution claim, there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment." *Washington v. County of Rockland*, 373 F.3d 310, 316 (2d Cir. 2004) (internal quotation marks omitted); *see also Rohman v. New York City Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) ("In order to allege a cause of action for malicious prosecution [**25] under § 1983, [the plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was . . . a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." (emphasis omitted)).

Here, it is undisputed that a criminal proceeding was initiated, that it terminated in Bond's favor, and that Bond suffered a liberty restraint having been held in custody until the charges were dismissed. Therefore, for Bond to raise a viable malicious prosecution claim, he must allege facts sufficient to demonstrate that the City lacked probable cause and that the City, through its agents, acted maliciously.

"Once a suspect has been indicted . . . the law holds that the Grand Jury action creates a presumption of probable cause." *Colon*, 60 N.Y.2d at 82; *see Boyd*, 336 F.3d at 76 (same). A plaintiff may overcome the presumption "only by evidence establishing that the police witnesses have not made a complete and full statement of the facts either to the Grand Jury or to the District Attorney, that they have misrepresented or falsified evidence, that they have withheld evidence or otherwise acted in bad faith." *Id*. at 82-83. "Thus, in order for a plaintiff to succeed in a malicious prosecution claim after having been indicted, 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Rothstein*, 373 F.3d at 283 (quoting *Colon*, 60 N.Y.2d at 83). In order

11

to rebut the presumption of probable cause, a plaintiff must "establish what occurred in the grand jury and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Id*. at 284 (quoting *Colon*, 60 N.Y.2d at 82.) Here, Bond has failed to meet this standard.

Where, as here, a plaintiff's only evidence to rebut the presumption of the indictment is his version of events, courts will find such evidence to be nothing more than "mere conjecture and surmise that [the plaintiff's] indictment was procured as a result of conduct undertaken by the defendants in bad faith," which is insufficient to rebut the presumption of probable cause. *Reid v. City of New York*, 00 Civ. 5164, 2004 U.S. Dist. LEXIS 5030, 2004 WL 626228, at *7 (S.D.N.Y. Mar. 29, 2004) (quoting *Savino*, 331 F.3d at 73); *see also Simmons v. New York City Police Dep't*, No. 03-7464, 97 F. App'x 341, 343 (2d Cir. Apr. 29, 2004) ("Although [plaintiff] testified that the arresting officer . . . told him that the officers would falsify evidence and manipulate line-ups in order to implicate him, this allegation is not, without more, sufficient to raise an inference that the indictment was procured by fraud or bad faith conduct."); *Scully v. City of Watertown*, No. 03 CV 846, 2005 U.S. Dist. LEXIS 40261, 2005 WL 1244838, at *11 (N.D.N.Y. May 25, 2005) ("The simple assertion that [plaintiff] was acquitted and therefore the officers must have lied is insufficient to overcome the presumption created by the grand jury's indictment . . . ."); *Montes v. King*, 00 Civ. 4707, 2002 U.S. Dist. LEXIS 14464, 2002 WL 1808209, at *3 n.5 (S.D.N.Y. Aug. 6, 2002) (finding that "unsubstantiated speculation" that officer acted in bad faith was not enough to survive summary judgment); *Jenkins v. City of New York*, 98 Civ. 7170, 98 Civ. 7338, 1999 U.S. Dist. LEXIS 15353, 1999 WL 782509, at *9, 11 (S.D.N.Y. Sept. 30, 1999) [**29] (despite later-discovered perjury by a civilian witness at the grand jury, plaintiff "failed to produce any evidence of intentional police misconduct and his

allegations are contradicted by the affidavits and contemporaneous documentary record in support of the motion. [Plaintiff] has thus failed to rebut the presumption that probable cause to commence the proceeding existed."), *aff'd*, 216 F.3d 1072 (2d Cir. 2000).

Here, Bond has failed to rebut this presumption. As an initial matter, as noted above, Bond may not attempt to defeat the City's motion to dismiss by attempting to amend his complaint with new facts asserted through counsel for the first time in his opposition. In addition, he has asserted no facts in his complaint or otherwise, other than his attorney's own conjecture, to suggest that any of the officers involved in this prosecution engaged in any conduct before the grand jury, let alone intentional misconduct that rises to the level required for a malicious prosecution claim. He asserts wholly conclusory allegations, for example, that "no real evidence was submitted to the grand jury connecting the Plaintiff to this crime," and that the victim's identification of Bond was 'very likely coerced by the officer to meet his objective, which was to punish the defendant for not cooperating in other investigations." These allegations are unsworn, and unsupported by any facts. They amount to nothing more than "unsubstantiated speculation" that is not sufficient to rebut the presumption of probable cause created by the grand jury's indictment. As such, his claim for malicious prosecution cannot survive.

3. **Negligence**

Bond alleges that the City's failure to get him "the aid he needed" constituted negligence, and that the city acted "negligently, carelessly, and recklessly" in allowing his rights to be violated. (Compl. at ¶¶ 31, 33.) As a result, he claims to have sustained unspecified "emotional, physical, and psychological injuries." (*Id.* at ¶¶ 23, 33.) The City argues that Bond's claim for negligence must be dismissed because under New York law a plaintiff bringing a cause of action

13

for negligence must file a notice of claim within ninety days of the injury. (Def.'s Mem. Mot. Dismiss at 7–8.)

As an initial matter, Bond's memorandum in opposition to the City's motion to dismiss entirely fails to respond to the City's arguments on this point, and courts in this circuit have held that a plaintiff's failure to respond to contentions raised in a motion to dismiss constitutes an abandonment of the applicable claims. *McLeod v. Verizon New York*, 995 F. Supp. 2d 134, 143–44 (E.D.N.Y. 2014) (gathering cases). Even if the Court disregards Bond's failure to respond, he has nonetheless failed to state a claim as required under Rule 12(b)(6).

State law claims, even when brought in federal court, are subject to state notice-of-claim requirements. *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d. Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)). Under New York law, a notice of claim is a "condition precedent" to bringing a personal injury action against a municipality. *Id.* at 794 (citing *Felder*, 487 U.S. at 152; *Brooks v. Maryland Gen. Hosp., Inc.*, 996 F.2d 708, 714–15 (4th Cir. 1993)). Bond was therefore required to comply with Section 50-e of New York General Municipal Law, which states that a notice of claim must be served "within ninety days after the claim arises . . . ." *Burks v. Nassau Cty. Sherrif's Dep't*, 288 F. Supp. 2d 298, 301 (E.D.N.Y. 2003) (citing N.Y. Gen. Mun. Law § 50-e(1)(a)).

As noted by the City, even accepting December 2013 as the accrual date for Bond's negligence claim, the ninety-day time period to file a notice of claim expired before the April 15, 2014 initiation of this action. Nowhere in Bond's complaint does he allege that he filed the necessary notice of claim. *See generally* N.Y. Gen. Mun. Law § 50-i(1)(b) (requiring that a plaintiff plead in his complaint or moving papers that at least thirty days have lapsed since the service of a notice of claim). Bond's claim for negligence must therefore be dismissed.

## CONCLUSION

For the reasons stated in this Memorandum and Order, the City's motion to dismiss (Doc. No. 14) is granted, and the Complaint is hereby dismissed. The Clerk of Court shall enter judgment in accordance with this Memorandum and Order, and close the case.

SO ORDERED.

Dated: Brooklyn, New York
September 28, 2015

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge